**Thomas M. HATCH, Appellant,**

v.

**Edward O. WILLIAMS and Evelyn L. Williams, Appellees.**

No. 10–01–235–CV.

Court of Appeals of Texas, Waco.

June 4, 2003.

---

D. Scott Cain, Bradley & Cain, L.L.C., Cleburne, for appellant.

Robert A. Sparks, Robert A. Sparks, P.C., Cleburne, for appellees.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

REX D. DAVIS, Chief Justice.

Edward Williams filed a reformation suit on the ground of mutual mistake regarding a conveyance of real property. Thomas Hatch filed an answer and asserted what he characterizes to this Court as a "counterclaim in trespass to try title." Following a bench trial, the trial court ordered the deed reformed in favor of Williams and denied Hatch's counterclaim. We affirm the trial court's judgment.

### I.  Background

Williams orally agreed to sell Hatch 87.2 feet of a 120–foot tract (and the house located thereon) on July 28, 1997. Williams sought to keep the remaining 32.8 feet as additional parking for his store, located on adjoining property. The legal description in the deed describes the entire 120–foot tract, instead of the agreed-upon 87.2 feet. The attorney handling the transaction testified that his of-

fice had simply made a mistake in attaching the wrong property description to the paperwork. Neither party knew of the mistake at the time of closing and the parties began jointly using the tract of land at issue.[1] Williams discovered the mistake on or about October 30, 2000. On November 3, 2000, Williams filed suit to reform the deed, and Hatch filed an answer asserting, among others, the affirmative defenses of the limitations bar of section 16.024 of the Texas Civil Practice and Remedies code (TCPRC), estoppel, ratification, waiver, and laches. Tex. Civ. Prac. & Rem.Code Ann. § 16.024 (Vernon 2002) (providing a three-year limitation to a suit to recover real property held by another in peaceable and adverse possession under title or color of title). Hatch included in his answer what he now terms a "counterclaim in trespass to try title." In this, he merely reasserts his allegation that he is the owner of the property by virtue of section 16.024 and asks the court to quiet title in his name. Williams filed an answer to Hatch's counterclaim, but failed to properly serve this answer. The trial court granted reformation due to mutual mistake and denied Hatch's counterclaim. No findings of fact or conclusions of law were requested or filed. In four points, Hatch argues that the trial court erred by: 1) denying his motion to disregard Williams's answer; 2) failing to grant a default judgment on his counterclaim; 3) denying his motion for judgment; and 4) failing to grant a new trial.

## II. Applicable Law

■ In a non-jury trial where no findings of fact or conclusions of law are filed or properly requested, it is implied that the trial court made all necessary findings to support its judgment. *Pharo v. Chambers County*, 922 S.W.2d 945, 948 (Tex. 1996); *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex.1989). The judgment of the trial court must be affirmed if it can be upheld on any legal theory supported by the evidence. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990) (citing *In re W.E.R.*, 669 S.W.2d 716, 717 (Tex.1984)).

## III. Motion to Disregard Plea of "Not Guilty" and Motion for Default Judgment

■ Hatch's first issue challenges the trial court's ruling on his motion to disregard Williams's answer. His second issue contends that the trial court erred in not granting Hatch a default judgment against Williams. Both of these issues are based on Hatch's counterclaim against Williams and are premised on that counterclaim being a trespass to try title claim. Specifically, Hatch argues that Texas Rule of Civil Procedure 788 requires Williams to file a plea of "not guilty" in order to put his defensive issues before the trial court on the issue of who holds title.[2] Tex.R. Civ. P. 788. He further argues that because Williams did not properly serve his plea of "not guilty" to Hatch's trespass to try title claim, the trial court should have struck the answer and granted Hatch a default judgment. We disagree with both arguments. Hatch's counterclaim did not meet the pleading requirements of Rule 783, and therefore it is not a trespass to try title claim. Tex.R. Civ. P. 783 (requir-

---

1. The parties shared payment to clear the 32.8 foot tract and surrounding land of tree limbs. Williams's customers often parked on this tract without objection. Hatch, however, paid the taxes on the tract.

2. Texas Rule of Civil Procedure 788 provides that a defendant in a trespass to try title action "may file only the plea of 'not guilty,' which shall state in substance that he is not guilty of the injury complained of in the petition filed by the plaintiff against him." Tex.R. Civ. P. 788.

ing that the petition in a trespass to try title suit state "[t]hat the defendant ... unlawfully entered upon and dispossessed [plaintiff] of such premises, stating the date, and withholds from [plaintiff] the possession thereof"). Thus, under Rule 92, Williams was deemed to have pleaded a general denial. TEX.R. CIV. P. 92 (when a cross-claim or counterclaim is served on a party making an appearance in an action, the party so served, in the absence of a responsive pleading, is deemed to have pleaded a general denial to those claims). Accordingly, we overrule issues one and two.

### IV.  Motion for Judgment

In his third issue, Hatch contends that the trial court erred by denying his motion for judgment. We note that there are significant distinctions between a directed verdict in a jury case and a motion for judgment in a non-jury case. *Carrasco v. Texas Transp. Inst.*, 908 S.W.2d 575, 576 (Tex.App.-Waco 1995, no writ). One distinction is the standard of review on appeal. *Id.* Because the judge in a bench trial is the arbiter of factual and legal issues, an appellate court must presume that the court ruled on the sufficiency of the evidence. *Id.* (citing *Qantel Bus. Sys., Inc. v. Custom Controls Co.*, 761 S.W.2d 302, 305 (Tex.1988)). Thus, the court's factual rulings will stand unless there is legally or factually insufficient evidence to support them. *Id.* However, we review questions of law *de novo.* *Id.* (citing *Mercer v. Bludworth*, 715 S.W.2d 693, 697 (Tex.App.-Houston [1st Dist.] 1986, writ ref'd n.r.e.)).

#### a.  Legal Standard

When the party complaining of legal sufficiency did not have the burden of proof at trial we conduct our review by considering only the evidence and infer-

ences that support the finding, and disregard contrary evidence and inferences. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex.1995). We can find the evidence legally insufficient if: 1) there is a complete absence of evidence for the finding; 2) there is evidence to support the finding, but rules of law or evidence bar the court from giving any weight to the evidence; 3) there is no more than a mere scintilla of evidence to support the finding; or 4) the evidence conclusively establishes the opposite of the finding. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997) (citations omitted).

A trial court's findings of fact are reviewed for factual sufficiency of the evidence under the same legal standards as those applied to review jury verdicts for factual sufficiency of the evidence. *Hitzelberger v. Samedan Oil Corp.*, 948 S.W.2d 497, 503 (Tex.App.-Waco 1997, pet. denied). When the party complaining of factual insufficiency did not have the burden of proof at trial we conduct our review by considering all the evidence in the record both for and against the finding, and we can find the evidence factually insufficient only if we conclude that the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *Checker Bag Co. v. Washington*, 27 S.W.3d 625, 633 (Tex.App.-Waco 2000, pet. denied). Reversal could occur because the finding was based on weak evidence, or because the proponent's proof, although adequate if taken alone, is overwhelmed by the opponent's contrary proof. *Checker Bag*, 27 S.W.3d at 633 (citations omitted). If we find the evidence to be factually sufficient, we are not required to detail all the evidence supporting the finding. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex.1998) (citations omitted). However, if we find the evi-

dence to be factually insufficient, we must detail all the evidence relevant to the issue and clearly state why the finding is so against the great weight and preponderance of the evidence that it is manifestly unjust. *Id.*

When the party that had the burden of proof at trial complains of legal insufficiency of an adverse finding that party must demonstrate that the evidence establishes conclusively, *i.e.*, as a matter of law, all vital facts in support of the finding sought. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 241 (Tex.2001). We first examine the record for evidence supporting the adverse finding, ignoring all evidence to the contrary. *Id.* If more than a scintilla of evidence supports the adverse finding, our inquiry ends. *Id.* "More than a scintilla of evidence exists where the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Burroughs Wellcome Co.,* 907 S.W.2d at 499 (citations omitted); *Beard v. Beard,* 49 S.W.3d 40, 55 (Tex. App.-Waco 2001, pet. denied).

When the party complaining of the factual sufficiency of the evidence had the burden of proof at trial it must demonstrate that the adverse finding is contrary to the great weight and preponderance of the evidence. *Dow Chemical Co.,* 46 S.W.3d at 242; *Beard,* 49 S.W.3d at 55. We weigh all the evidence, and we can set aside the adverse finding only if it is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Dow Chemical Co.,* 46 S.W.3d at 242. In doing so, we must detail the evidence and state in what regard the contrary evidence greatly outweighs the evidence in support of the adverse finding. *Id.* We will apply these standards to the arguments raised by Hatch.

### b. Reformation Due to Mutual Mistake

Hatch argues that the trial court erred by denying his motion for judgment because Williams offered no evidence and factually insufficient evidence to support his reformation claim. A party is entitled to the reformation of a deed upon proving that the parties "had reached an agreement ... but the [deed] did not reflect the true agreement because of a mutual mistake." *Thalman v. Martin,* 635 S.W.2d 411, 413 (Tex.1982). Further, the fact that an error was caused by a scrivener's failure to embody the true agreement of the parties in a written instrument is a proper ground for reformation. *Cornish v. Yarbrough,* 558 S.W.2d 28, 32 (Tex.Civ. App.-Waco 1977, no writ).

Williams testified that the parties' agreement was to convey only the 87.2–foot tract. Hatch testified that he intended to purchase only the 87.2–foot tract, and that he knew Williams intended to sell only the 87.2–foot tract. The attorney who handled the transaction testified that his office had erroneously attached the wrong property description to the documents. Thus, the record contains some evidence and factually sufficient evidence to support the trial court's judgment. In other words, the finding that the parties' agreement was not reflected in the property description due to mutual mistake is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

Hatch also argues that the trial court erred in granting the reformation of the deed because the trial court did not order Williams to reimburse Hatch for any expenses Hatch incurred in maintaining the disputed land. Hatch points to no pleadings requesting this equitable relief and no evidence introduced to support such a claim. We hold this argument waived.

#### c. Adverse Possession

■ Hatch next contends that Williams's claim does not survive the three-year limitations period regarding the defense of adverse possession. TEX. CIV. PRAC. & REM.CODE ANN. § 16.024 (Vernon 2002). Adverse possession is statutorily defined as "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." *Id.* § 16.021(1) (Vernon 2002); *Rhodes v. Cahill,* 802 S.W.2d 643, 645 (Tex.1990). "It has been said that such possession must not only be actual, but also visible, continuous, notorious, distinct, hostile (*i.e.,* adverse), and of such a character as to indicate unmistakably an assertion of a claim of exclusive ownership in the occupant." *Rhodes,* 802 S.W.2d at 645 (quoting *Satterwhite v. Rosser,* 61 Tex. 166, 171 (1884)).

The evidence shows that the parties jointly used the disputed tract. Williams testified that the parties shared expenses for removing tree limbs from the disputed tract and customers of Williams's store frequently parked on the tract without objection. Hatch's testimony confirmed that Williams's customers parked on the tract and that the parties jointly used the land. This joint use negates Hatch's adverse possession claim because it refutes an unmistakable claim of exclusive ownership. Hatch failed to conclusively establish his adverse possession claim. Likewise, the court's refusal to find for Hatch on his adverse possession claim is not against the great weight and preponderance of the evidence.

#### d. Estoppel and Ratification

■ Hatch pleaded estoppel and ratification as equitable defenses to pre-

serve his rights and preclude Williams from claiming title under mutual mistake. An essential element of both equitable estoppel and ratification is knowledge of the material facts. *Samms v. Autumn Run Community Improvement Assn.,* 23 S.W.3d 398, 403 (Tex.App.-Houston [1st Dist.] 2000, pet. denied) (ratification); *Stable Energy, L.P. v. Newberry,* 999 S.W.2d 538, 548 (Tex.App.-Austin 1999, pet. denied) (estoppel); *Calhoun v. Killian,* 888 S.W.2d 51, 55 (Tex.App.-Tyler 1994, writ denied) (estoppel); *K.B. v. N.B.,* 811 S.W.2d 634, 638 (Tex.App.-San Antonio 1991, writ denied) (ratification).

The evidence establishes that, for over three years, Williams did not know that the deed did not correctly describe the agreed-upon 87.2–foot tract, but instead described the entire 120–foot tract. He added that Hatch did not inform him of the mistake in the deed.[3] Therefore, Hatch failed to conclusively establish the estoppel and ratification defenses. In addition, the court's refusal to find for him on the estoppel and ratification defenses is not contrary to the great weight and preponderance of the evidence.

#### e. Waiver

■ Hatch also asserted waiver as a defense to Williams's claim for reformation. Waiver is the intentional relinquishment of a known right, or intentional conduct inconsistent with claiming that right. *Sun Exploration & Prod. Co. v. Benton,* 728 S.W.2d 35, 37 (Tex.1987); *Vessels v. Anschutz Corp.,* 823 S.W.2d 762, 765 (Tex. App.-Texarkana 1992, writ denied). Intent is the key element in establishing waiver. *G.H. Bass & Co. v. Dalsan Props.-Abilene,* 885 S.W.2d 572, 577 (Tex.App.-Dallas 1994, no writ).

Hatch and Williams both testified that the intended conveyance was the 87.2–foot

---

**3.** Hatch testified that he knew of the mistake  in the deed three days after closing.

tract, and not the entire 120–foot tract incorrectly described in the deed. There is no evidence that Williams intentionally relinquished his claim to the disputed tract at any time. In fact, the evidence shows that he continued to use the disputed property as additional parking for his store. Accordingly, Hatch failed to conclusively establish the waiver defense. Likewise, the trial court's refusal to find for him on the waiver defense is not contrary to the great weight and preponderance of the evidence.

### f. Laches

In order to assert the affirmative defense of laches, a defendant must show 1) unreasonable delay by one having legal or equitable rights in asserting them, and 2) a good faith change of position by another to his detriment because of the delay. *Ft. Worth v. Johnson,* 388 S.W.2d 400, 403 (Tex.1964). In this case, Williams filed his suit for reformation of the deed less than one month after discovering the mistake. The trial court's refusal to find for a defense of laches is not contrary to the great weight and preponderance of the evidence.

### g. Summary of Claims and Defenses

In sum, Hatch failed to conclusively, *i.e.,* as a matter of law, establish any of his defenses, and the trial court's refusal to find for him on any of his defenses is not contrary to the great weight and preponderance of the evidence. In addition, the trial court's finding of mutual mistake is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. We overrule issue three.

### V. Motion for New Trial

Hatch argues in his fourth issue that the trial court erred by failing to grant a new trial because Williams's failure to serve an answer on Hatch's counter-claim denied Hatch due process because Hatch had no notice of Williams's defenses. A trial court has wide discretion to deny a motion for new trial and the court's ruling will not be disturbed on appeal in the absence of a showing of an abuse of that discretion. *Delgado v. Hernandez,* 951 S.W.2d 97, 98 (Tex.App.-Corpus Christi 1997, no writ). Hatch and his attorney appeared and tried the case without objection to Williams's defenses. Hatch never claimed surprise or unfair prejudice pertaining to the legal theories offered at trial by Williams. He also did not present any relevant evidence in his motion for new trial that he had not already offered at trial. Thus, we find that the trial court did not abuse its discretion by denying Hatch's motion for new trial. Accordingly, we overrule issue four.

The judgment of the trial court is affirmed.